■ HOWARD BRANDSTON, Appellant, v A. JOSEPH GIORDANO et al., Respondents.—Order of the Supreme Court, New York County (Ethel B. Danzig, J.), entered December 24, 1985,

which, *inter alia,* denied plaintiff's motion to modify the report of the Judicial Hearing Officer concerning valuation of the loft apartments of defendants, is modified, on the law and the facts, to the extent of reducing the valuation of each of defendants' interests to $235,666.67, and otherwise affirmed, without costs or disbursements.

The three parties to this action are partners in 141 West 24th Street Realty Associates, which owns a seven-story loft building at that address. Plaintiff has a five-sevenths interest and defendants each have a one-seventh interest. Each of the parties occupies one of the three top floors in the building, holding a 30-year lease expiring in 2005, and each pays $500 per month for maintenance. Plaintiff also holds a lease to the first four floors, which are sublet by him to commercial enterprises pursuant to subleases expiring in 1990.

After plaintiff brought this action to dissolve the partnership, the parties agreed that the valuation of the partnership interests of the defendants would be decided by a Judicial Hearing Officer. They also stipulated to the appointment of an appraiser, Robert Keen, as an expert on the valuation of loft units. The appraiser's report and his testimony concluded that, under an income approach, the value of the entire building was $1,160,000, the value of the fifth floor (defendant Sklar) was $155,000 and the value of the sixth floor (defendant Giordano) was $161,000. Under a coop/condominium approach based upon sales of comparable coop and condominium units, the appraiser valued each of defendants' interests at $271,000. The appraiser also utilized a leasehold approach based upon capitalization of the profit that defendants could make by subletting their floors for the remainder of their leases and adding the value of their reversionary interests. This resulted in a $187,226 value for the fifth floor and a $196,503 value for the sixth floor. Defendants' expert testified to higher values utilizing this approach but the Hearing Officer rejected his testimony.

It appears, as found by the Hearing Officer, that a 1975 coop plan filed with the Attorney-General was effective even though the entity owning the building was not a corporation, but a partnership. However, interests would be difficult to mortgage or sell since the entity owning the property is a partnership. In addition, the testimony indicated that it would also be difficult to sell a one-seventh interest in this partnership, rendering the income and leasehold approach to market value less advantageous than in the case of a condominium and coop. Thus, separating the commercial and residential

portions of the building into separate condominiums would avoid the unfavorable tax consequences of having such mixed residential and commercial tenants. The residential condominium could then be converted into a cooperative for sale to residential tenants.

We agree that the Hearing Officer was correct in finding this method of valuation to be the best approach. In fixing a valuation for these apartments, however, based upon their highest and best use as condominiums/cooperatives, the cost of conversion must be deducted from the award. *(See, Scheur v State of New York,* 65 AD2d 921.) "Moreover, consistent with its finding of highest and best use, the court here properly deducted from the award for the land the cost of demolishing the existing structures." *(Supra,* at p 921.)

In the matter before us, however, the valuation of $271,000 found by the Hearing Officer did not fairly reflect the "net" valuation of these apartments by allowing for the necessary costs and expenses of effectuating such a condominium-cooperative conversion. Thus, although the Hearing Officer apparently accepted the testimony of the appraiser Keen that it would cost at least $25,000 for the conversion, he failed to deduct even this amount from the valuation. Further, there was credible and more specific testimony by a real estate attorney, Kenneth Jacobs, who had experience with the conversion process, that the legal fees alone would cost $25,000. In addition, Mr. Jacobs testified, without any countervailing evidence, that there would be additional costs of transfer taxes, sales and advertising costs, engineering fees, etc., which would total (together with the $25,000 legal fees) at least $82,000. The testimony by Mr. Jacobs that the fifth and sixth floors would have to remain vacant for about six months at a loss of rental income of $24,000 also reflected a proper expense which should be deducted from the gross valuation arrived at by the Hearing Officer.

Although not addressed by the parties, it appears fair to allocate these costs and expenses solely against the three residential units, since sale of the four floors used for commercial purposes, which have been sublet until 1990, is speculative and hypothetical at this time. The costs and expenses of conversion should, however, be borne by plaintiff's residential interest since his seventh-floor unit will be more marketable in such converted form than in the present partnership cooperative form.

Contrary to the dissent, we also hold that each of defendants' interests should bear one third of the total amount of

the costs and expenses of $106,000, or $35,333.33 each, reducing the net valuation of each of the defendants' interest to $235,666.67. This assessment is appropriate because the valuation of defendants' units is enhanced by the condominium-cooperative conversion method, and the greater marketability of their respective units is necessarily factored into these values. Concur—Asch, J. P., Milonas, Rosenberger and Wallach, JJ.

Fein, J., dissents in a memorandum as follows: I would affirm. It is undisputed that plaintiff brought this action to dissolve the partnership because he wished to acquire the leasehold interests of the two defendant partners who had no desire to sell or move.

No reason appears, and none is suggested in the majority opinion or in appellant's briefs, why defendants should be chargeable with whatever legal fees, transfer taxes, advertising costs and engineering fees plaintiff may have to bear in connection with acquiring the property from defendants for his own purposes or similar expenses after he has acquired it. The fact that the condo-conversion valuation has been found appropriate provides no basis for assessing such fees and taxes against defendants. Equally without basis is any charge against defendants for lack of rental income which plaintiff may sustain after defendants are required to move against their will.

It appears to be a novel doctrine which imposes upon defendants such alleged costs of plaintiff in acquiring and utilizing the property after he acquires it. *Scheur v State of New York* (65 AD2d 921), relied on by the majority, is not to the contrary. In that condemnation case "the highest and best use of the subject property was as an assemblage of cleared vacant land for commercial development. The evidence amply established a reasonable probability that the property would be put to such use in the near future" (p 921). Thus, it was found appropriate to deduct the cost of demolition of the existing structures. Since the owner was being awarded the value of cleared vacant land, the cost of the anticipated demolition was a proper deduction.

This hardly provides a basis for requiring the payment of plaintiff's legal and similar expenses by defendants whom he is dispossessing through no fault of their own.

No reason whatever appears for charging defendants rent for a period after they remove, and no authority is cited in support of that imposition. Plaintiff's alleged loss of rental

income after he acquires defendants' space flows from his acquisition of such space against defendants' will. It has nothing to do with the value of the leasehold.